UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA,

    - against -

YESENIA CRUZ,

            Defendant.

------------------------------------------X

07 Cr. 0058-02 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On May 4, 2007, Yesenia Cruz ("Cruz" or the "Defendant") appeared before the Honorable Theodore H. Katz of this District and pleaded guilty to one count of conspiracy to commit wire fraud and health care fraud. For the reasons set forth below, Cruz will be sentenced to a four month term of imprisonment, to be followed by a four month term of home confinement, and an additional thirty-two month term of supervised release. Cruz also will be required to pay restitution of $326,825.50 and a special assessment of $100.

**Prior Proceedings**

Cruz was named in a one-count indictment filed in the

Southern District of New York on January 23, 2007 charging her with conspiracy to commit wire fraud and health care fraud in violation of 18 U.S.C. §§ 1343 and 1347. Cruz pleaded guilty to the indictment on May 4, 2007. This Court accepted the guilty plea on June 1, 2007. Cruz's sentencing is scheduled for November 13, 2007.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of

the defendant; and

        (D) to provide the defendant with needed
            educational or vocational training, medical
            care, or other correctional treatment in the
            most effective manner;

   (3)  the kinds of sentences available;

   (4)  the kinds of sentence and the sentencing range
        established for --

        (A) the applicable category of offense committed
            by the applicable category of defendant as set
            forth in the guidelines ...;

   (5)  any pertinent policy statement ... [issued by
        the Sentencing Commission];

   (6)  the need to avoid unwarranted sentence
        disparities among defendants with similar
        records who have been found guilty of similar
        conduct; and

   (7)  the need to provide restitution to any victims of

        the offense.

18 U.S.C. § 3553(a).


     A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

3

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Cruz's personal and family history.

**The Offense Conduct**

The following description draws on the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

In August, 2000, co-defendant Francisco Molina began working for Everyready Insurance ("Everyready" or "the Insurer") in its no-fault insurance unit as a claims examiner. His job responsibilities included processing bills, requesting independent medical examinations, and sending bills for review. Beginning in December, 2000, Molina and a fellow employee ("Co-Conspirator 1" or "CC-1") developed a scheme to defraud Everyready by submitting additional false claims for services relating to actual claimants of the Insurer. During the month of December, 2000, Molina and CC-1 began meeting every day after work to plan the fraudulent scheme, and agreed to split the profits.

4

In furtherance of the fraudulent scheme, in December, 2000, Molina created a fraudulent chiropractic license in the name of "Francois Moulinet" and fraudulent incorporation papers for a fictitious and non-registered medical clinic called "City-Wide Diversified Medical Services."

Using patient information available to him by virtue of his position as a claims examiner for the Insurer, Molina submitted fraudulent bills for fictitious services rendered by "Francois Moulinet" by adding claims for chiropractic services to the claims of insureds who had made claims against the Insurer relating to car accidents, but who had not made any claim for chiropractic care in connection with the accidents. Molina submitted the false claims documentation in person to CC-1, a senior claims examiner for the Insurer, who approved payment of the fictitious claims.

In early 2001, prompted by concerns that the number and amount of claims to "Francois Moulinet" would draw the attention of the Insurer, CC-1 advised Molina to begin billing for services under the fictitious clinic name "City-Wide Diversified Medical Services" rather than under the fictitious individual chiropractor identity "Francois Moulinet," which Molina did.

In 2002, Molina, prompted by concern that too many claims

5

had been paid to "City-Wide Diversified Medical Services" began billing claims under an additional fictitious entity "Sosa & Associates."

In July, 2004, Molina was terminated from his job at the Insurer. On the day of his termination, CC-1 asked Molina if the scheme could be continued with the help of Cruz. Molina agreed to approach Cruz, and Cruz subsequently agreed to participate in the scheme in exchange for receiving fifty percent of the proceeds of every false claim.

Cruz participated in the scheme by reviewing and compiling valid claim information provided by insureds, which she wrote down on a piece of paper and gave to Molina at meetings near the offices of the Insurer after work. Molina, using the information provided by Cruz, then submitted bills by facsimile to Cruz, which Cruz processed for payment.

After being informed by CC-1 in May of 2005 that the Insurer had discovered the fraudulent scheme, Molina shredded documents relating to the scheme and disposed of the shredder. Molina also used a software package to eliminate documents and evidence relating to the scheme from his computer and threw computer disks into a river.

6

Among the documents provided to the FBI by the Insurer were facsimile transmissions dated August 12, 2004, demonstrating that Molina, using the false identities of Drs. Masayuki Enomoto and Zong Cai, sent a facsimile transmission to Cruz, in her capacity as an employee of the Insurer, using an Internet facsimile service. The documents transmitted were fraudulent insurance claim documents requesting payment to Drs. Enomoto and Cai, who did not perform the services represented on the claim documents, and who in fact did not exist.

Over the course of this fraudulent scheme, the Insurer paid $326,825.50 in claims proceeds that were deposited into the account of "City-Wide Diversified Medical Services." Every check from that account was made payable either to "cash" or to "Francois Moulinet."

A review of New York State Department of Vehicles driver identification photographs on file for Molina and for "Francois Moulinet" has revealed that both depict photographs of Molina.

**The Relevant Statutory Provisions**

The maximum term of imprisonment is twenty years,

7

pursuant to 18 U.S.C. §§ 1343 and 1349.

If a sentence of imprisonment is imposed, the Court may impose a term of not more than three years' supervised release, pursuant to 18 U.S.C. § 3583(b)(2).

Cruz is eligible for not less than one nor more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service, pursuant to 18 U.S.C. § 3563(a)(2).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine is $250,000, pursuant to 18 U.S.C. §

3571(b)(3). A special assessment in the amount of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2006 edition of the United States Sentencing Commission Guidelines Manual (as amended effective May 1, 2007) has been used in this case for calculation purposes, pursuant to section 1B1.11(a).

The guideline for violations of 18 U.S.C. §§ 1343 and 1347 is found in section 2B1.1. The base offense level is 7, pursuant to section 2B1.1 (a)(1). Because Cruz stole more than $30,000, but less than $70,000, the offense level is increased by 6 levels pursuant to section 2B1.1(b)(1)(D). Because Cruz has demonstrated acceptance of responsibility through her allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction is warranted, pursuant to section 3E1.1(a). The resulting adjusted offense level is 11.

Cruz has no known criminal convictions. Thus, Cruz has a criminal history category of I.

9

Based on a total offense level of 11 and a criminal history category of I, the Guidelines range for imprisonment is 8 to 14 months. Pursuant to section 5C1.1(d)(2), the minimum term of imprisonment may be satisfied by a sentence that substitutes home detention provided that at least one-half of the minimum term is satisfied by imprisonment.

The Guidelines range for a term of supervised release is at least two but not more than three years, pursuant to section 5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to section 5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to section 5D1.1(a).

Cruz is not eligible for probation because the applicable Guidelines range is in Zone C of the sentencing table, pursuant to section 5B1.1, cmt. 2.

The fine range is from $2,000 to $20,000, pursuant to section 5E1.2(c)(3). Subject to the defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. Section 5E1.2(d)(7). The most recent advisory from the

Administrative Office of the United States Courts suggests a monthly cost of $2036.92 to be used for imprisonment, a monthly cost of $294.60 for supervision, and a monthly cost of $1,799.04 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant to all of the factors, it is hereby determined that a Guidelines sentence is warranted.

## The Sentence

Cruz will be sentenced to a four month term of imprisonment, to be followed by a four month term of home confinement, and an additional thirty-two month term of supervised release.

As Cruz has kept all court appearances, has been in compliance with all terms and conditions of her pretrial release, and is not viewed as a flight risk or a danger to the community, she is deemed a good candidate for voluntary surrender. Cruz is therefore directed to report to the Bureau of Prisons no later than April 28, 2008 to commence a four month term of imprisonment. Cruz is further directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a three-year term of home confinement and supervised release. It is recommended that Cruz be supervised by the district of her residence.

As mandatory conditions of her supervised release, Cruz shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) cooperate in the collection of DNA as directed by the probation officer and (5) submit to one drug test within 15 days of release and two periodic drug tests thereafter for use of a controlled substance.

Furthermore, the standard conditions of supervision (1-13), outlined in the judgment, shall be imposed with the following additional special conditions:

(1) The defendant shall submit her person, residence,

place of business, vehicle, or any other premises under her control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of probation may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

It is further ordered that Cruz shall make restitution payable to the Clerk, U.S. District Court, 500 Pearl Street, New York, NY, 10007, for disbursement to Everyready Insurance in the amount of $26,825.50 and Great American Insurance (which, as Everyready's insurer, has paid $300,000 of the loss incurred due to the instant offense) in the amount of $300,000, except that no further payment shall be required after the sum of the amounts actually paid by all defendants has fully covered the compensable injury. The restitution shall be paid in monthly installments of 15% of gross monthly income over a period of supervision to commence 30 days after release from custody. The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the defendant is able to pay a fine, so the fine in this case shall be waived.

13

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for November 13, 2007.

It is so ordered.

**New York, NY**
**November 7, 2007**

_____
ROBERT W. SWEET
U.S.D.J.